United States District Court
Southern District of Texas
**ENTERED**
July 06, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RHOMA BANNIER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:17-CV-154 |
| § | |
| ELIZABETH CORDOVA, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Rhoma Bannier's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's retaliation claims be retained against one defendant in her individual capacity.  It is respectfully recommended further that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.  Lastly, it is respectfully recommended that Plaintiff's remaining claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  On March 26, 2007, following a guilty plea, he received two twenty-year sentences for aggravated assault and aggravated sexual assault convictions out of Harris County, Texas.  He is currently confined at the McConnell Unit in Beeville, Texas.

Plaintiff filed his Original Complaint on May 1, 2017, and named the following individuals as defendants: (1) Elizabeth Cordova, McConnell Unit Correctional Officer; (2) Corey Furr, McConnell Unit Assistant Warden; (3) P. Chapa, Assistant Regional IV Director; and (4) Bryan Collier, TDCJ Executive Director.  (D.E. 1 at p. 3).  The undersigned construes Plaintiff's lawsuit as suing each defendant in his or her individual and official capacity.

On June 27, 2017, a *Spears*[1] hearing was conducted where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's Original Complaint (D.E. 1) or at the hearing.

Plaintiff, who is a practicing Muslim, has been incarcerated at the McConnell Unit since October 1, 2015. Upon his arrival, he was assigned to work as a janitor in Building 7 of the McConnell Unit. Defendant Cordova was one of Plaintiff's desk supervisors starting in early 2016. On August 1, 2016, Defendant Cordova questioned Plaintiff about some stolen bleach. In refusing Defendant Cordova's attempt to recruit Plaintiff as a "jailhouse" snitch, Plaintiff told her that he had no knowledge about who stole the bleach. Defendant Cordova then become very belligerent toward Plaintiff.

Defendant Cordova brought a disciplinary case against an inmate named Dilworth for taking the bleach. Plaintiff provided a witness statement that Dilworth did not take the bleach because he was in another area of the prison with Plaintiff. Ultimately, an inmate named Rodney Jones admitted to taking the bleach, and he subsequently received a disciplinary case for his theft. (D.E. 8, p. 1). After Plaintiff provided his witness statement, Defendant Cordova began a campaign of harassment against Plaintiff through intimidation, interference with opportunities to earn work-time credits, and inappropriate comments about Muslims.

On August 16 and 17, 2016, another desk supervisor named Officer Mata informed Plaintiff that Defendant Cordova did not want Plaintiff to work on either day.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff then returned to his cell.  By not turning out to work, Plaintiff was prevented from earning work-time credits toward early release was also placed in jeopardy of having a disciplinary case brought against him.  Instead of filing a disciplinary case against Plaintiff, the desk supervisor in charge at this time summoned Plaintiff to go to work.

On August 17, 2016, Plaintiff filed a Step 1 grievance (Grievance No. 2016197856), claiming that Defendant Cordova had retaliated against him for giving a written statement in Dilworth's disciplinary case by taking action to prevent Plaintiff from working. (D.E. 1, pp. 12-13).  According to Plaintiff, Defendant Cordova was upset at Plaintiff for not providing the answer she wanted in identifying the person who took the bleach.  Assistant Warden Furr responded to this grievance on October 14, 2016, finding that "the Unit Administration has been made aware of your concern and will take action as deemed necessary."  (D.E. 1, p. 13).  Regional Director Chapa subsequently responded to Plaintiff's Step 2 grievance, concluding that Plaintiff's complaint had been appropriately addressed at Step 1.  (D.E. 1, p. 15).

From August 17, 2016, through September 4, 2016, Defendant Cordova took steps to prevent Plaintiff from working.  During this time, Defendant Cordova made no comments regarding Plaintiff's Muslim faith or any grievances he had filed.  On September 4, 2016, Plaintiff again attempted to check in for work.  Defendant Cordova told him: "So you want to file grievances, well go home, we don't need you."  (D.E. 1, p. 6).

On September 6, 2016, Plaintiff filed a Step 1 grievance (Grievance No. 2017002842), claiming that Defendant Cordova had retaliated against him for filing grievances against her by preventing Plaintiff from working which had the effect of denying him the ability to earn work time credits. (D.E. 1, pp. 16-17). Assistant Warden Furr responded to this grievance on October 12, 2016, finding that an investigation of the incident revealed "no evidence of staff's misconduct[,] retaliation, or harassment." (D.E. 1, p. 17). Regional Director Chapa subsequently responded to Plaintiff's Step 2 grievance, concluding that Plaintiff's complaint had been appropriately addressed at Step 1 and that no further action was warranted. (D.E. 1, p. 19).

Between September 4 and 11, 2016, Plaintiff showed up for work but was turned away by Defendant Cordova. On September 11, 2016, Plaintiff again was turned away from work by Defendant Cordova, who cited Plaintiff's filing of grievances and said that "we are going to get you." (D.E. 1, p. 6). The next day, Defendant Cordova initiated a disciplinary case against Plaintiff because Plaintiff did not turn out for work that day. Plaintiff stated that he did not turn out for work because he was observing a Muslim Holy Day and had a lay-in pass for that day. Plaintiff's disciplinary case was subsequently dismissed due to his lay-in pass.

On September 14, 2016, Plaintiff filed a Step 1 grievance (Grievance No. 2017006888), claiming that Defendant Cordova had retaliated against him for filing grievances against her by: (1) preventing Plaintiff from working on September 11, 2016; and (2) filing a false disciplinary case against Plaintiff for not working on September 12, 2016, even though he had a lay-in pass that day. (D.E. 1, pp. 20-21). Assistant Warden

5 / 16

Furr responded to this grievance on October 17, 2016, finding that an investigation of the incident revealed "no evidence to substantiate [Plaintiff's] allegations of staff misconduct." (D.E. 1, p. 21). Regional Director Chapa subsequently responded to Plaintiff's Step 2 grievance, concluding that Plaintiff's complaint had been appropriately addressed at Step 1 and that no further action was warranted. (D.E. 1, p. 23).

On November 15, 2016, in accordance with the prison's bi-annual shakedown, Plaintiff arrived at the gym with his personal property and noticed five tables. Defendant Cordova instructed Plaintiff to bring his property to her table and said "now, it's my turn." (D.E. 1, p. 7). Contrary to a prison administrative rule that requires the prisoner to watch prison officials search his personal property, Defendant Cordova ordered Plaintiff to sit down and face away from the search of his personal property. Plaintiff noticed that other prisoners were able to watch prison officials search their personal property.

When Plaintiff returned to his cell, he noticed that some of his personal property and several stacks of his legal materials were missing. Specifically, Plaintiff cited as missing legal materials relating to his state court criminal case. Plaintiff needed the legal materials to file at some later date a state habeas petition attacking his convictions. Plaintiff acknowledged he did not know of a possible claim at this time to challenge his guilty plea and that he could research the matter in the law library without needing his legal papers.[2]

---

[2] At the *Spears* hearing, Plaintiff conceded that he was not seeking to assert a denial-of-access-to courts claim, but rather a retaliation claim against Defendant Cordova for taking his legal materials.

On November 24, 2016, Plaintiff filed a Step 1 grievance (Grievance No. 2017046456), claiming that Defendant Cordova had retaliated against him for filing grievances against her by taking his personal property and legal materials during the November 15, 2016 shakedown.  (D.E. 1, pp. 24-25).  Plaintiff further sought the replacement of his legal materials.  (D.E. 1, p. 25).  Assistant Warden Furr responded to this grievance on January 5, 2017, finding that an investigation of the incident revealed "no evidence to substantiate [Plaintiff's] allegations of staff misconduct, harassment, or improperly confiscated property."  (D.E. 1, p. 25).  Regional Director Chapa subsequently responded to Plaintiff's Step 2 grievance, concluding that Plaintiff's complaint had been appropriately addressed at Step 1, that staff statements refuted Plaintiff's complaints of retaliation and confiscation of legal materials, and that no further action was warranted.  (D.E. 1, p. 11).

Plaintiff clarified at the *Spears* hearing that he seeks money damages for the return of his legal materials, which he estimates to cost between $1,500 and $2,000.  Defendant Cordova no longer supervises Plaintiff as he was transferred to another building to work as a janitor.  Plaintiff acknowledged that he never has personally spoken to Assistant Warden Furr about his complaints of Defendant Cordova retaliating against him.

### III.   LEGAL STANDARD.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## IV. DISCUSSION.

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues each Defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

B.  **Claims against the Supervisory Defendants.**

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff sues Executive Director Collier under a theory that he created a policy that led to the destruction of his personal and legal property. However, Plaintiff's allegations only indicate that Defendant Cordova violated a prison administrative rule requiring inmates to watch prison officials search the inmates' personal property. Plaintiff's complaint, therefore, is against Defendant Cordova for violating that rule and not against Executive Director Collier in his supervisory capacity as the head of the TDCJ. Plaintiff otherwise fails to allege that Executive Director Collier personally

participated in any of the acts of which Plaintiff claims violated his constitutional rights. Accordingly, it is respectfully recommended that Plaintiff's claim against Executive Director Collier be dismissed with prejudice.

Plaintiff further sues Assistant Warden Furr and Regional IV Director Chapa because they denied all of his Step 1 and Step 2 grievances, respectively. However, the responses by these defendants to Plaintiff's Step 1 and Step 2 grievances are not actionable conduct under § 1983. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that, because inmates have no constitutionally protected liberty interest in having grievances resolved to their satisfaction, there is no due process violation when prison officials fail to do so); *Bonneville v. Basse*, No. 2:12-CV-0200, 2012 WL 4854721, at *3 (N.D. Tex. Sep. 21, 2012) (concluding that a prison official's denial of prisoner's Step 1 grievances fails to state a due process claim because there is no "federally-protected right to have his grievances investigated and resolved"). Plaintiff fails to allege any facts to suggest that either Assistant Warden Furr or Regional IV Director Chapa were personally involved in any of the acts of which Plaintiff claims violated his constitutional rights. Accordingly, it is respectfully recommended that Plaintiff's claims against Assistant Warden Furr and Regional IV Director Chapa be dismissed with prejudice.

    **C.   Retaliation Claims against Defendant Cordova**

A prisoner's First Amendment right of access to courts includes the right to seek redress through an established prison system. *See Jackson v. Cain*, 864 F.2d 1235, 1248-

49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. *Id.* at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Id.* Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a

job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

In this case, Plaintiff alleges that Defendant Cordova began a "campaign of harassment" against Plaintiff in retaliation for Plaintiff's refusal to act as a jailhouse "snitch" and implicate inmate Dilworth in the stolen bleach incident. Shortly after Plaintiff's refusal to act as a snitch and submission of a written statement in support of inmate Dilworth, Defendant Cordova acted on August 16, 2016, to prevent Plaintiff from working and earning work-time credits. Defendant Cordova expressly referred to Plaintiff's filing of grievances against her when later turning Plaintiff away from work on September 4 and 11, 2016, respectively. The next day on September 12, 2016, Defendant Cordova initiated a disciplinary case against Plaintiff for not turning out for work that day, even though Plaintiff was observing a Muslim Holy Day and had a lay-in pass. On November 15, 2016, Defendant Cordova told Plaintiff "it is my turn" when searching Plaintiff's personal property during the bi-annual shakedown.

"Because being labeled a snitch could place an inmate's life in danger, it follows that [Plaintiff] would have a protected liberty interest in not being labeled one." *See David v. Lee*, 401 F. Supp. 2d 749, 757 (S.D. Tex. 2005). The undersigned, therefore, assumes without deciding that Plaintiff has a constitutional right to not act as a snitch in connection with a prison investigation. *See id.* (assuming without deciding that a prisoner "has a constitutional right not to participate in a prison investigation"); *Jackson v. Johnson*, 15 F. Supp. 341, 364 (S.D. N.Y. 1998) (assuming without deciding that an inmate has a constitutional right not to snitch). Furthermore, as stated above, Plaintiff

has a First Amendment right to seek redress through a prison grievance, and prison officials may not retaliate against him for exercising that right. *See Woods*, 60 F.3d at 1164; *Jackson*, 864 F.2d at 1248-49.

Plaintiff's allegations suggest that he exercised his constitutional rights and that, but for his decision not to snitch against inmate Dilworth and his subsequent filing of several grievances, Defendant Cordova would not have engaged in the retaliatory acts of denying Plaintiff the ability to work, instituting a false disciplinary case against Plaintiff, and confiscating his legal materials.[3] Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Defendant Cordova be retained and that service be ordered on this defendant.

### D. Due Process Claim (Deprivation of Legal Materials)

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must

---

[3] Plaintiff also appears to allege that Defendant Cordova retaliated against him by making inappropriate comments about Muslims. At the *Spears* hearing, however, Plaintiff did not identify any specific comments that Defendant Cordova allegedly made against him regarding his Muslim faith. In any event, such alleged verbal harassment by Defendant Cordova is considered *de minimis* and does not state a constitutional violation. *See Garner v. Moore*, No. C-11-169, 2012 WL 1098271, at *9 (S.D. Tex. Mar. 8, 2012) ("Only where officials actually undertake positive action for retaliatory purposes do such adverse actions amount to actionable retaliation.").

either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Contrary to Plaintiff's statements in his complaint, Texas law provides him with available post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, Plaintiff's loss of his legal materials does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy). A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson*, 709 F.2d at 383 n.3. The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers*, 97 F.3d at 94. Plaintiff does not indicate in his Original Complaint or at the *Spears* hearing that he has filed suit in state court pursuant to § 501.007 or for conversion.

Because Plaintiff has not pursued his available state court remedies, he cannot allege that the post-deprivation remedy available to him is inadequate. Thus, Plaintiff's claim for property loss based on the taking of his legal materials fails to state a cognizable constitutional claim.

To the extent that Plaintiff alleges his loss of legal materials was due to Defendant Cordova's failure to follow TDCJ's written rules and policies, such allegations fail to state a due process claim. It is well-established that the violation of a TDCJ rule or regulation, without more, does not equate with a constitutional violation, and is not actionable. *Myers,* 97 F.3d at 95. Thus, even assuming that Defendant Cordova failed to follow a written TDCJ rules or regulations when ordering Plaintiff to face the other way during the property search and that this failure caused the loss of Plaintiff's property, this allegation fails to state a cognizable constitutional violation. Accordingly, it is respectfully recommended that Plaintiff's due process claim be dismissed.

## V.  CONCLUSION.

For the reasons stated above, it is respectfully recommended that the Court retain Plaintiff's retaliation claims against Defendant Cordova and that service be ordered on Defendant Cordova in her individual capacity. It is respectfully recommended further that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. Lastly, it is respectfully recommended that Plaintiff's remaining claims against the remaining defendants be

dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Respectfully submitted this 6th day of July, 2017.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).