Case 2:17-cv-00154   Document 39   Filed on 03/08/19 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
March 08, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RHOMA BANNIER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:17-CV-00154 |
| § | |
| ELIZABETH CORDOVA, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

In this *pro se* prisoner civil rights action under 42 U.S.C. § 1983, Plaintiff Rhoma Bannier asserts that his rights were violated when he was retaliated against by a corrections officer after attempting to seek redress through the prison grievance system. (D.E. 1).[1] Bannier is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division, and is currently housed at the McConnell Unit in Beeville, Texas. On September 28, 2018, Defendant Elizabeth Cordova ("Defendant") moved for summary judgment, contending that she is entitled to qualified immunity and that Bannier has failed to establish a viable claim of retaliation. (D.E. 29). Bannier responded on November 6, 2018. (D.E. 24). For the reasons stated herein, it is respectfully recommended that the motion for summary judgment be granted in part and denied in part.

---

[1] The Court previously dismissed all of Bannier's claims, with the exception of his retaliation claim. (D.E. 10; D.E. 31). Defendant raises argument on these other claims in her motion for summary judgment because they had not yet been dismissed. (*See generally* D.E. 29). However, because the claims have since been dismissed, they need not be addressed further.

## I. JURISDICTION

The Court has federal question jurisdiction for claims brought under § 1983 pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

### a. Verified Complaint

In May 2017, Bannier filed a verified complaint against Defendant in her individual capacity, in which he alleges the following. (D.E. 1 at 1-9). In August 2016, Defendant attempted to recruit Bannier as a "jailhouse snitch" in an incident involving stolen bleach. (*Id.* at 4). Bannier declined to get involved because he did not know who stole the bleach. Defendant then began to harass Bannier by making inappropriate comments about Muslims and interfering with his opportunity to earn work-time credits. (*Id.*). Bannier filed grievances regarding Defendant's interference with his work time, but Defendant retaliated by increasing her continuous harassment. (*Id.* at 6). On August 16 and 17, 2016, Bannier attempted to go to work as a janitor, but the building desk officer informed him that Defendant did not want him to work. On September 4, 2016, Bannier attempted to check in for work, but Defendant told him: "So you want to file grievances, well go home, we don't need you." On September 11, 2016, Bannier again attempted to check in for work, but Defendant told him: "Keep writing grievances and we are going to get you, go home." (*Id.*). On September 12, 2016, Defendant, despite knowing that Bannier was excused from work that day because it was a Muslim holy day, gave him a disciplinary infraction because he refused to go to work. (*Id.*). The September 12 disciplinary infraction was dismissed following a review. (*Id.* at 7).

Bannier alleges that Defendant's actions were intentional retaliation against him because he filed grievances and states that he suffered mental anguish. (*Id.*).

Bannier further alleges that, during a shakedown, Defendant intentionally chose to be the officer who searched his property, stating: "Now it's my turn." (*Id.*). She told Bannier to turn his back to her so that he could not see or protest the destruction of his property. When he returned to his cell, he discovered that several stacks of his legal documents were missing, including trial transcripts. The missing property was worth more than $2,000. (*Id.*). Bannier alleges that Defendant destroyed the documents in retaliation for his use of the grievance process. (*Id.* at 8). Bannier seeks damages, along with declaratory and injunctive relief. (*Id.* at 4).

      b.  **Summary Judgment Evidence**

            *1.  Grievance Documents and Prison Records*

On August 17, 2016, Bannier filed a Step One grievance in which he alleged that he had turned out for work as a janitor on both August 16 and 17, but the desk officer told him that Defendant did not want him to work. (D.E. 29-1 at 2). Bannier recounted that the issues with Defendant had been ongoing since an investigation she conducted into stolen bleach earlier that month. During that investigation, Bannier told Defendant that he did not know who stole the bleach, and later made a statement in support of an innocent inmate who had been blamed for the theft. He had also heard Defendant make inappropriate comments about Muslims, including that they were violent and needed to be put in their place. (*Id.*). Bannier requested to be allowed to work in peace and without retaliation from Defendant. (*Id.* at 3).

3

Defendant stated that she never had any communication with the desk officer and never retaliated against Bannier. (*Id.* at 11). Her supervisor stated that Defendant conducted herself in a professional manner at all times and did not retaliate against any offender. (*Id.*). However, a desk officer stated that he received a phone call telling him not to allow Bannier to work because he had not worked previous days. (D.E. 37-1 at 51).[2] In response to Bannier's grievance, Defendant was given additional training on remaining professional with offenders and was no longer assigned to a desk or responsible for ensuring that offenders were turned out for work. (*Id.* at 52). The Warden concluded that no further action was necessary. (D.E. 29-1 at 3). Bannier filed a Step 2 grievance in which he stated that it was clear that Defendant's harassment began after he participated in the investigation of the stolen bleach and helped clear an innocent inmate of the blame. (*Id.* at 4). The Assistant Regional Director concluded that Bannier's complaint was appropriately addressed at Step One. (*Id.* at 5).

On September 6, 2016, Bannier filed a Step One grievance alleging that, when he turned out for work on September 4, Defendant told him: "So you want to file grievances, well go home, we do not need you." (*Id.* at 14). Defendant continuously retaliated against him for filing grievances. (*Id.*). Bannier again requested that he be allowed to work in peace and without retaliation for filing a grievance. (*Id.* at 15).

Defendant stated that Bannier was sent back to his building on September 4 because he was late to work and there were already excessive numbers of janitors. (*Id.* at

---

[2] Bannier attached evidence to his motion to supplement his complaint. Although that motion was denied, he also cites the evidence in his response to the motion for summary judgment.

4

20). Her supervisor stated that Defendant conducted herself in a professional manner at all times. (*Id.*). The Warden concluded that no further action was warranted on Bannier's grievance. (*Id.* at 15). Bannier filed a Step Two grievance stating that he was not late for work, which could be verified by video. (*Id.* at 16). The Assistant Regional Director concluded that Bannier's complaint was appropriately addressed at Step One, noting that video surveillance was unavailable due to retention and Bannier had not presented witnesses or other evidence. (*Id.* at 17).

On September 14, 2016, Bannier filed a Step One grievance alleging that, when he turned out for work on September 11, Defendant told him: "Keep writing grievances, we are going to get you, go home." (*Id.* at 24). The next day, Defendant wrote a disciplinary case against Bannier for failing to arrive at work even though Bannier had a lay-in for observance of a Muslim holy day. The disciplinary case was deemed invalid after investigation by a sergeant. (*Id.*). Bannier again requested that he be allowed to work in peace and without retaliation for filing a grievance. (*Id.* at 25).

Defendant stated that she never wrote a disciplinary case against Bannier, did not know what religion he belonged to, and did not send him away from work. (*Id.* at 30). Bannier did not notify her or the sergeant that he would not be present on the Muslim holy day. Defendant's supervisor stated that she conducted herself in a professional manner at all times. (*Id.*). The lieutenant colonel stated that Defendant had not harassed, threatened, retaliated against, or made inappropriate comments about Bannier. (*Id.* at 32). Bannier's disciplinary record showed no cases from September 2016. (*Id.* at 33). The Warden concluded that no action was warranted on Bannier's grievance because the

5

investigation revealed no evidence to substantiate his claims. (*Id.* at 25). Bannier filed a Step Two grievance alleging that a proper investigation was not conducted. (*Id.* at 26). The Assistant Regional Director concluded that the grievance was appropriately addressed at Step One and had been properly investigated. (*Id.* at 27).

On November 24, 2016, Bannier filed a Step One grievance alleging that, on November 15, 2016, he was in the gym awaiting a search during a bi-annual shakedown. (*Id.* at 35). Bannier was assigned to wait in the second line and instructed not to change lines, while Defendant was conducting searches on inmates in the fifth line. Defendant called Bannier over to her line and stated: "Now it's my turn." While Defendant was searching his property, she told him to face the other direction so he could not see what was being confiscated. When Bannier returned to his cell, he discovered that his legal documents were missing. He believed that Defendant confiscated or discarded his legal documents in retaliation for his filing of the previous grievances. (*Id.*). Bannier requested that his legal documents be replaced and that he suffer no more harassment or retaliation. (*Id.* at 36).

The Property Officer stated that Bannier's grievance was false and that the only items confiscated from him during the shakedown were headphones, a hotpot, and a radio. (*Id.* at 41). A Disposition of Confiscated Offender Property form indicated the same and was signed by Bannier. (*Id.* at 42). Defendant stated that she did not harass Bannier at any time, always conducted her job in a professional manner, and did not tell Bannier to switch lines. (*Id.* at 43). Her supervisor stated that Defendant always acts in a professional manner and provides confiscation papers for all property taken. (*Id.*). The

Warden concluded that no action was warranted on Bannier's grievance because there was no evidence to substantiate his claims. (*Id.* at 36). Bannier filed a Step Two grievance alleging that the investigation was biased because the surveillance cameras were not reviewed. (*Id.* at 37). He also alleged that Defendant had a history of confiscating documents from inmates and destroying or damaging them. (*Id.*). The Assistant Regional Director concluded that Bannier's grievance was appropriately addressed at Step One, noting that staff statements refuted his allegations, he had provided no witnesses or evidence, and the video surveillance was unavailable due to retention. (*Id.* at 38).

Bannier's inmate records indicated that he had never lost any good conduct or work-time credits. (D.E. 29-2 at 1). His disciplinary records for the period between February 1, 2016, and February 1, 2017, indicated that Bannier's only disciplinary case was in February 2016 for an offense unrelated to those discussed in his grievances. (D.E. 29-3 at 1-7). The disciplinary case was not written by Defendant. (*Id.* at 5-6).

### 2. *Miscellaneous Evidence*

Rodney Jones, an inmate at the McConnell Unit who worked with Bannier, stated the following in a declaration. (D.E. 8 at 1). In August 2016, Defendant questioned Bannier about stolen bleach, and Bannier told her that he did not know who stole the bleach. Defendant "became very belligerent" towards Bannier. Jones later admitted to Defendant that he was the one who stole the bleach. He received only a minor disciplinary case as a result, but he noticed that Defendant's attitude towards Bannier

7

worsened. Defendant did not allow Bannier to work, and Jones also overheard her say that "someone needs to teach them Muslims a lesson." (*Id.*).

Bannier stated in an affidavit that he never had an issue with Defendant until the incident involving the bleach and his refusal to participate in her investigation. (D.E. 37-1 at 7). When her harassment and retaliation became too severe, he asked to change jobs and was transferred to the laundry department. (*Id.*).

### III. DISCUSSION

#### a. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016). In doing so, the Court can credit "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from

disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Furthermore, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248. However, on summary judgment, the factual allegations in a verified complaint may be treated the same as an affidavit. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). A complaint is verified when the plaintiff signs a declaration under the penalty of perjury that its contents are true and correct. *Id.* "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

    **b.  Retaliation**

In her motion for summary judgment, Defendant argues that Bannier has failed to establish his claim of retaliation because he cannot show that he suffered a retaliatory adverse act. (D.E. 29 at 7). First, as to his claim that Defendant interfered with his work

9

schedule and prevented him from earning work-time credits toward early release, Defendant argues that Bannier never lost any work-time and that, due to the nature of Bannier's convictions, good conduct time could not affect his release date. (*Id.* at 7-9). Second, as to Bannier's claim that Defendant initiated a false disciplinary case against him, Defendant argues that records show there was no disciplinary case brought against him. (*Id.* at 9). Finally, as to Bannier's claim that Defendant confiscated his legal materials, Defendant argues that the claim is internally inconsistent because Bannier alleges that she took his legal materials from his cell at the same time she was searching his property in the gym. (*Id.* at 9). She argues that records show that the only items confiscated from Bannier were headphones, a hotpot, a radio, and an antenna. (*Id.*).

Bannier responds that he has shown a retaliatory adverse act because he has a constitutionally protected interest in obtaining good-time credits. (D.E. 36 at 9-10). He argues that he received a disciplinary case, but because it was resolved informally, it was not included in his disciplinary record. (*Id.* at 10-11). He argues that Defendant misconstrues his argument about the confiscation of his legal materials because he did not claim that the legal materials were taken from his cell, but rather from his bag during the shakedown. (*Id.* at 11-12). Bannier contends that he has shown that Defendant intended to retaliate against him because she knew about his grievances and lied to the grievance investigator. (*Id.* at 12-13).

Retaliation is not expressly referred to in the Constitution, but it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is

10

actionable if the retaliatory act could deter a person of ordinary firmness from exercising his constitutional rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Id.* Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). An action taken by prison officials that is motivated by retaliatory animus may be actionable even though it would be legitimate if taken for a different reason. *Id.* at 1165.

The Fifth Circuit has emphasized that courts must carefully scrutinize prisoners' claims of retaliation. *Id.* at 1166. In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

To state a valid § 1983 claim for retaliation, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299,

310 (5th Cir. 1997). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* A successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Id.*

Under Texas law, the statute in effect at the time an offense was committed determines an inmate's eligibility for release on mandatory supervision or parole. *Ex parte Thompson*, 173 S.W. 3d 458, 459 (Tex. Crim. App. 2005). At the time that Bannier committed his offenses, which consisted of aggravated sexual assault of a child on December 31, 2005, and aggravated assault on May 27, 2006,[3] anyone convicted of a first-degree felony under Tex. Penal Code §§ 22.02 or 22.021 was ineligible for mandatory supervision. Tex. Gov't Code § 508.149 (2005). A person convicted of aggravated sexual assault was eligible for parole when his actual time served, without consideration of good conduct time, equaled one-half of the sentence or 30 calendar years, whichever was less. Tex. Gov. Code § 508.145(d) (2005); Tex. Code Crim. Proc. art. 42.12, § 3g(a)(1)(E) (2005).

Here, Bannier asserts that Defendant retaliated against him in three ways, the first two of which are insufficient to survive summary judgment. First, as to his claim that Defendant interfered with his ability to earn work-time credits, even assuming that

---

[3] The Court takes judicial notice of Bannier's convictions on the TDCJ online offender search, available at offender.tdcj.texas.gov/OffenderSearch/index.jsp. *See* Fed. R. Evid. 201; *Madrigal v. Davis*, 2018 WL 2416478 at *1 (S.D. Tex. 2018) (taking judicial notice of a prisoner's convictions on the TDCJ online offender search).

Bannier has established that Defendant violated a specific constitutional right and had the intent to violate that right, he has not shown that he suffered any retaliatory adverse act. *Jones*, 188 F.3d at 324-25.  Any loss of work-time credits had no adverse effect on Bannier's release date because, due to the nature of his convictions, he is ineligible for release on mandatory supervision.  *See* Tex. Gov't Code. § 508.149 (2005).  Similarly, any loss of work-time credits had no adverse effect on Bannier's potential parole date because the parole determination does not take good-time credits into account.  *See* Tex. Gov. Code § 508.145(d) (2005); Texas Rules of Crim. P. 42.12 Sec. 3g(a)(1)(E) (2005). Second, as to Bannier's claim that Defendant filed a false disciplinary action against him, he again fails to show that he suffered a retaliatory adverse act.  As Bannier concedes, the disciplinary case was dismissed by prison officials because he had a valid lay-in pass for that day. (D.E. 1 at 7).  Bannier does not show any other adverse effects resulting from the dismissed disciplinary action.  Thus, Defendant's motion for summary judgment should be granted as to these two claims.

However, Bannier's third claim—that Defendant retaliated against him by destroying his legal materials—has sufficient evidentiary support as to each prong of the retaliation test to survive summary judgment.  As an initial matter, contrary to Defendant's assertions, Bannier does not allege that the legal documents were taken from his cell, but rather that they were taken during the search and that he did not notice they were gone until he returned to his cell. (*See* D.E. 1 at 7).

As to the first prong of the retaliation factors, Bannier has alleged that Defendant retaliated against him due to his use of the grievance system, which is a specific

constitutional right. (D.E. 1 at 6, 8); *Woods*, 60 F.3d at 1164. Second, viewing the evidence in a light most favorable to Bannier, he has presented sufficient evidence of a chronology of events from which Defendant's intent can be inferred where: (1) he filed grievances against Defendant; (2) Defendant made several threatening comments following the grievances; and (3) Defendant's destruction of the legal materials was prefaced by telling Bannier: "Now it's my turn." (D.E. 1 at 6-7). Although Defendant denied making the threatening comments or acting unprofessionally in any way in her responses to the grievances, Bannier's verified complaint contradicts those statements. (D.E. 29-1 at 11, 20, 30, 43); *Hart*, 343 F.3d at 765 (stating that the factual allegations in a verified complaint are treated the same as an affidavit). At summary judgment, the Court must resolve this factual dispute in Bannier's favor and cannot weigh the credibility of the statements. *Caboni*, 278 F.3d at 451.

As to the third prong, Bannier has shown an adverse retaliatory act because he states that Defendant destroyed property that was worth $2,000, which is enough to deter an ordinary person from the further exercise of his rights. (D.E. 1 at 7); *Morris*, 449 F.3d at 686. Defendant does not offer any evidence to refute the value of the legal materials. As to the final prong, Bannier has shown that, but for Defendant's retaliatory motive, the property would not have been destroyed given that Defendant: (1) instructed him to change lines so she could be the one to search his property; (2) stated "[n]ow it's my turn"; and (3) made Bannier turn around so he could not see what property was confiscated. (D.E. 1 at 7-8). Defendant disputes Bannier's version of events and denies confiscating the legal materials, but the Court must construe all disputed facts in

14

Bannier's favor and cannot evaluate the credibility of witnesses on summary judgment. (D.E. 29-1 at 43); *Caboni*, 278 F.3d at 451; *Salazar-Limon*, 826 F.3d at 274-75. Although Defendant provides evidence that the only property taken from Bannier was headphones, a hotpot, and a radio, that does not foreclose that she also took the legal property without documenting it. (*See* D.E. 29-1 at 41-42). Thus, Defendant's motion for summary judgment should be denied as to this claim.

### b. Qualified Immunity

In her motion for summary judgment, Defendant argues that she is entitled to qualified immunity on Bannier's retaliation claims. (D.E. 29 at 12-13). She argues that Bannier cannot carry his burden of showing that she is not entitled to qualified immunity because he has not established that his constitutional rights were violated. (*Id.* at 13-14).

Bannier responds that Defendant violated prison policy and his constitutional rights by destroying his legal documents without providing him an opportunity to challenge that destruction. (D.E. 36 at 16). He argues that he has a constitutional liberty interest in not being labeled a "snitch" and that Defendant violated the well-established rule that prison officials may not retaliate against inmates for exercising their right to file lawsuits or grievances. (*Id.* at 17).

Qualified immunity protects government officials performing discretionary functions from civil damages liability if their actions were objectively reasonable under clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

15

Once a government employee asserts the defense of qualified immunity, the burden shifts to a plaintiff to demonstrate that qualified immunity does not bar their recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* However, the Supreme Court has held that a case may be dismissed based on either step in the qualified immunity analysis as "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A factually identical dispute need not have occurred, but the unlawfulness of the conduct must be apparent. *Id.* It is clearly established in the Fifth Circuit that a prison official may not retaliate or harass an inmate for complaining to a supervisor about a guard's misconduct. *Woods*, 60 F.3d at 1164.

Here, summary judgment is proper on Bannier's claims regarding the interference with his work-time credits and the filing of the false disciplinary case on the alternative

16

ground that Defendant is entitled to qualified immunity. As discussed above, Bannier has failed to establish the violation of a constitutional right because he has not established retaliation as to those two claims. *See Saucier*, 533 U.S. at 201. However, Defendant is not entitled to qualified immunity on Bannier's claim that Defendant retaliated against him by destroying his legal materials. First, there is a genuine issue of material fact regarding whether Defendant violated Bannier's right to not be retaliated against for filing a grievance regarding her misconduct. As discussed above, viewing the evidence in a light most favorable to Bannier, he has met each prong of the retaliation framework. *Salazar-Limon*, 826 F.3d at 274-75; *Jones*, 188 F.3d at 324-25. Second, the Fifth Circuit has determined that it is clearly established that a prison official may not retaliate or harass an inmate for complaining to a supervisor about a guard's misconduct. *Woods*, 60 F.3d at 1164. Accordingly, although summary judgment is appropriate on Bannier's first two claims on the alternative ground that Defendant is entitled to qualified immunity, she is not entitled to qualified immunity on Bannier's third claim and summary judgment would be improper.

    c. **Remaining Issues**

Defendant argues that, to the extent that Bannier claims to have suffered mental anguish, he cannot recover damages absent evidence of a physical injury. (D.E. 29 at 5-6). Bannier responds that he can recover for mental anguish because he has alleged other compensable injuries as well. (D.E. 36 at 5-7). Defendant also argues that Bannier has not specified what injunctive or declarative relief he seeks, or how injunctive relief would correct a violation of a federal rights. (D.E. 29 at 16). Bannier responds that § 1997e

does not preclude him from obtaining injunctive or declaratory relief and that damages are inadequate to remedy his injury. (D.E. 36 at 7-8). He argues that the Court can order Defendant to search for his missing wife in order to replace the documents that were destroyed, which included his wife's affidavit. (*Id.* at 8).

No civil action may be brought by a person confined in prison for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act. 42 U.S.C. § 1997e(e).

Injunctive relief is used sparingly and only in clear and plain cases. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). Where a prisoner seeks prospective injunctive relief regarding prison conditions, that relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the violation of the right. 18 U.S.C. § 3626(a).

Upon the filing of an appropriate pleading, any court may declare the rights and other legal relations of any interested party seeking such a declaration. 28 U.S.C. § 2201(a).

Here, to the extent that Bannier seeks relief because he suffered mental anguish, that claim fails because he has not shown, nor has he attempted to show, that he suffered a physical injury or was the victim of a sexual act. 42 U.S.C. § 1997e(e). Similarly, Bannier has not met his burden for injunctive relief where he has not made, or even attempted to make, the statutory showings required to obtain an injunction. *See* 18 U.S.C. § 3626(a). Finally, Bannier's request for a declaratory judgment fails because he

has not indicated what rights or other legal relations would be settled.  (*See* D.E. 1 at 4); 28 U.S.C. § 2201(a).  Thus, summary judgment is appropriate on these claims.

## IV.  RECOMMENDATION

Accordingly, it is respectfully recommended that Defendant's motion for summary judgment be GRANTED on Bannier's claims that Cordova retaliated against him by interfering with his work-time credits and filing a false disciplinary case against him.  It is further recommended that summary judgment be DENIED on Bannier's claim that she retaliated against him by destroying his legal materials.  Plaintiff should be allowed to pursue money damages for the cost to replace his legal materials.

Respectfully submitted this 8th day of March, 2019.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).